IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY D. RAVER, *et al.*, | : | |
| Plaintiffs, | : | Case No. C2:00-cv-142 |
| v. | : | Judge Smith |
| REGINALD A. WILKINSON, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

### REPORT AND RECOMMENDATION

This civil rights action was brought pursuant to 42 U.S.C. § 1983 by ten inmates who, at the time of filing, were housed at the Chillicothe Correctional Institution. They alleged a number of claims against the Ohio Adult Parole Authority and Ohio correction officials. On September 28, 2001, with the exception Plaintiff Ridenour's claims, Plaintiffs' complaint was dismissed. Plaintiffs appealed the dismissal, and the Sixth Circuit Court of Appeals remanded this case for a determination of two issues: (1) what impact, if any, the Ohio Supreme Court's decision in *Layne v. Ohio Adult Parole Authority*, 97 Ohio St. 3d 456, 457 (2002), had on Plaintiffs' claims and (2) whether Plaintiffs were represented by counsel throughout the proceedings and what effect, if any, this issue had on the proceedings. On December 16, 2004 and March 29, 2005, the parties filed supplemental briefs on these issues (docs. 365 and 373).

**I. Facts.**

This case was originally filed in February 2000 by Plaintiff John Hill, an inmate at the Chillicothe Correctional Institution ("CCI"). At all times while Hill remained a party to

1

this litigation, he was represented by counsel. Plaintiffs Larry B. Raver, Darrell Stephens, and Mark Grove claim that throughout all of the proceedings they were and continue to be proceeding *pro se.* However, they argue because of docketing errors and other mistakes, these three Plaintiffs were treated as if represented by Hill's attorney. This resulted in Raver, Stephens, and Grove's failure to be served with Defendants' motion for judgment on the pleadings. Consequently, they did not respond to the motion, and on September 28, 2001, Judge Smith granted Defendants' motion for judgment on the pleadings and dismissed Raver, Stephens, and Grove's claims.

On December 12, 2003, the Sixth Circuit issued an Order remanding Raver, Stephens, and Grove's claims to this Court for a determination of whether these Plaintiffs were represented by counsel for purposes of the motion for judgment on the pleadings and what benefit, if any, the Ohio Supreme Court's decision in *Layne v. Ohio Adult Parole Authority* would have had on this Court's original decision to dismiss Plaintiffs' claims when deciding the motion for judgment on the pleadings.

**II. Discussion.**

    **A. Representation of Counsel**.

A party has the right to proceed *pro se* just as they have the right to be represented by counsel. *Wolfel v. United States*, 711 F.2d 66, 68 (6th Cir. 1983). Raver, Stephens, and Grove maintain that at all times throughout this litigation they were proceeding *pro se.* However, the record contradicts their proposition.

Plaintiffs' brief in opposition to Defendants' motion for judgment on the pleadings or in the alternative qualified immunity states (doc. 42), "Now Come, the *Plaintiffs* by

2

and through their undersigned counsel, William L. Summers and Edwin J. Vargas, . . . ." (Emphasis added). This motion also states on page 2 that William L. Summers and Edwin J. Vargas are "Attorneys for all Plaintiffs." The Certificate of Service attached to this same motion states, "The undersigned does hereby certify that Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss was sent regular U.S. mail to the following this 28th day of June . . . ." The certificate goes on to include the names and addresses of all ten Plaintiffs including Raver, Stephens, and Grove. There are other filings that state attorney Vargas is appearing on behalf of all Plaintiffs. For example, a May 29, 2001 motion for an extension of time states that it is brought by Plaintiffs, not just Plaintiff John Hill (doc. 40).

On the other hand, attached to Plaintiffs' May 20, 2004 reply to Defendants' memorandum in opposition to Plaintiffs Mark Grove, Larry D. Raver, and Darrell Stephens's motion for leave to file an amended complaint (doc 330), is the February 18, 2004 affidavit of William L. Summers, an associate with attorney Edwin Vargas, who also purportedly represented Plaintiff John Hill. The affidavit states, "In an abundance of caution and to make certain that there is no confusion, at no time were myself, or anyone associated with the firm of Summers and Vargas Co. L.P.A. representing anyone other than John Hill in the subject litigation." (Summer Aff., ¶ 1). The affidavit directly conflicts with the information contained in the earlier filings that were certified to this Court.

Rule 5, Fed. R. Civ. P., requires that all papers be served on all parties to the litigation unless the court orders otherwise. However, if a party is represented by an attorney, the Rules permit the attorney to be served. Generally, whether an attorney-

3

client relationship exists turns "largely on the reasonable belief of the prospective client." *Cuyahoga County Bar Ass'n v. Hardiman*, 100 Ohio St. 3d 260, 262 (2003). The situation in this case is somewhat unusual. Here it appears that Plaintiffs Raver, Stephens, and Grove acquiesced to the legal representation provided by Edwin Vargas and the other attorneys at Summers & Vargas, L.P.A. Vargas filed pleadings that were captioned on behalf of all of Plaintiffs, and Plaintiffs were provided notice of Vargas's representation. It was not until Vargas lost on the motion for judgment on the pleadings that Plaintiffs Raver, Stephens and Grove objected to the representation provided by Vargas. They then began arguing that they had not been served with the Magistrate Judge's August 21, 2001 report and recommendation; and therefore, they could not object to the report and recommendation. However, as just stated, they did not object when attorney Vargas was arguing on their behalf. They only objected when he lost. *See* Plaintiffs' Dec. 9, 2002 motion to amend judgment (doc. 276).

      This Court relied on the representation made by Vargas, that he was in fact representing all of the plaintiffs, and Plaintiffs knowingly acquiesced in that representation. While a party represented by an attorney may terminate the relationship, prior to the Magistrate Judge's report and recommendation recommending the dismissal of Plaintiffs' complaint and Judge Smith's adoption of that report and recommendation, Plaintiffs did not object to the representation, and Raver, Stephens, and Grove have submitted no evidence that would show that the attorney-client relationship had been severed. *See Brown v. Johnstone,* 5 Ohio App. 3d 165, 166 (Summit County 1982) (stating that the attorney client relationship terminates when there is a "clear manifestation of intent to terminate" the relationship that is

4

communicated from one to the other). Moreover, Attorney Vargas has not provided any explanation of why he submitted documents to this Court stating that he was representing all Plaintiffs in this matter.

**B. The *Layne* Decision.**

In March 1998, the Ohio Adult Parole Authority ("OAPA") adopted new parole guidelines. *Layne v. Ohio Adult Parole Authority*, 97 Ohio St. 3d 456, 457 (2002). The revised guidelines contain a "parole guidelines chart." The chart was designed to aid in the determination of how long a person should remain imprisoned. Under these guidelines, the OAPA is to consider two factors: (1) "the seriousness of an offender's criminal offense," and (2) "the offender's risk of recidivism." *Id.* Based on these scores, each inmate is assigned an offense category score, which appears on the vertical axis of the chart, and a criminal history or risk score, which is on the horizontal axis of the chart. *Id.* Where these numbers intersect on the chart determines the "applicable guideline range." *Id.*

Layne, one of the inmate plaintiffs in the case, was indicted for the following violations: (1) kidnapping; (2) abduction; and (3) two counts of having a weapon while under disability. He pleaded guilty to abduction and two counts of having a weapon. If Layne would have been convicted of the crimes that he pleaded guilty to, his highest offense category score would have been a 7 and his highest criminal history and risk category would have been a 4, which would have given him a guideline range between 60 and 84 months. *Id.* at 459. However, the OAPA decided that Layne had also committed the crime of kidnapping even though he was not convicted of this offense nor

5

did he plead guilty to this offense.  Based on this determination, Layne was given a criminal offense category score of 10; this increased the applicable guideline range to 150 to 210 months.

The Ohio Supreme Court determined that the words eligible for parole "ought to mean something." *Id.* at 463.  Therefore, "in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction." *Id.* at 464.  This ensures that "a criminal offender will receive meaningful consideration for parole." *Id.* at 463-64.

In this case, on April 3, 1992, Plaintiff Darrell Stephens pleaded guilty to rape and felonious sexual penetration.  (Coakley Aff., ¶ 6).  He was sentenced to 5 to 25 years in prison.  His first parole hearing was held on July 21, 1995.  Under the guidelines, a rape conviction could result in a sexual offense category of 9 or 10.  Stephens's act of rape was given a 9.  The guidelines state that felonious sexual penetration should be graded as rape, so it was also given an offense category of 9.  Since the offenses occurred at different times, the OAPA then applied the Multiple Separate Offense section, which increased the offense category from 9 to 10.  His criminal history score was assessed as a 2.  Based on this information, Stephens has a guideline range of 150 to 210 months.  Stephens maintains that under the old guidelines he would have been eligible for parole after serving 40 months (3 and 1/3 years).

Plaintiff Mark Grove was found guilty of aggravated murder.  The parole board categorized his offense as a category 13, and assigned him a 0 for his criminal history score.  (Coakley Aff., ¶ 8).  This gave him a suggested guideline range of 300 months to life.  He had served 168 months at the time of his first hearing on November 25, 2005.

He was given a continuance until November 2008.  Grove maintains that under the former guidelines, he would have been eligible for parole after serving 14 years in prison.

Larry Raver was convicted of murder by a jury in 1983.  He was sentenced to 15 years to life.  (Coakley Aff., ¶ 6).  Raver was seen before the parole board on January 18, 1996; they voted to continue his incarceration until November 2005.  He was given an offense category score of 11 and a criminal history or risk score of 6, which put him in a parole guideline range of 240 to 300 months.  (Coakley Aff., ¶ 8).  Raver claims that according to his court imposed sentence, he should have been eligible for parole in 12 ½ years; but instead, he must serve 20 years before receiving a meaningful hearing for parole.

This case was remanded for a determination of what effect the decision in *Layne* had on these Plaintiffs.  In *Goodballet v. Mack*, 266 F. Supp. 2d 702, 710 (N.D. Ohio 2003), the court stated that the *Layne* decision was confined to the issue of whether the parole board could properly consider other underlying offenses besides those offenses for which the inmate had been convicted when deciding an inmate's parole eligibility. *See also Buhrman v. Wilkinson,* 257 F. Supp. 2d 1110, 1122 (S.D. Ohio).  Plaintiffs Raver, Stephens, and Grove do not argue that the OAPA considered other offense conduct outside of the offenses of conviction when they went before the OAPA for parole consideration.  Rather, Plaintiffs are arguing that under the new OAPA guidelines they are no longer eligible for parole as soon as they would have been under the former parole guidelines.  This case was remanded with the specific direction for a determination of what effect, if any, the *Layne* decision had on these Plaintiffs' claims.

7

This Court ruled in its September 28, 2001 Order that the parole guidelines do not violate the *ex poste facto* clause. The decision in *Layne* is inapplicable to these Plaintiffs, and the decision has no effect on this Court's previous decision.

### III. Conclusion.

Accordingly, I **RECOMMEND** that this Court **UPHOLD** its earlier decision **DISMISSING** Plaintiffs' claims and entering **JUDGMENT** in favor of Defendants.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel  
United States Magistrate Judge