IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN HILL, *et al.*, :

Plaintiffs, : Case No. 2:00-cv-142

v. : Judge Smith

RONALD A. WILKINSON, *et al.*, : Magistrate Judge Abel

Defendants. :

**ORDER**

This matter is before the Court on Plaintiffs Larry D. Raver, Darrell Stephens, and Mark Grove's July 7, 2005 motion for reconsideration and objection to Magistrate Judge Abel's June 16, 2005 Report and Recommendation (doc. 379). On September 28, 2001, judgment on the pleadings was entered in favor of Defendants for all of the plaintiffs' claims except for the claims of William A. Ridenour. (doc. 214). Raver, Stephens, and Grove filed objections which were overruled; they appealed. On December 15, 2003, the Sixth Circuit issued an Order remanding Raver, Stephens, and Grove's claims to this Court for consideration of two issues: 1) a clarification regarding "the earlier confusion surrounding the representation, or non-representation" of Plaintiffs; and 2) what effect, if any, the Ohio Supreme Court's decision in *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St. 3d 456 (2002), has on this Court's original judgment on the pleadings. (Sixth Circuit Dec. 15, 2003 Order, p. 3).

In the June 16, 2005 Report and Recommendation, The Magistrate Judge recommended upholding the Court's earlier decision because Raver, Stephens, and

Grove acquiesced in the representation provided by Vargas and Summers, and the *Layne* decision did not apply to the facts of their claims. Raver, Stephens, and Grove have filed a number of objections to the Magistrate Judge's Report and Recommendation.

**I. Representation.**

In February 2000, ten inmates at the Chillicothe Correctional Institution ("CCI") filed this action. Plaintiffs Larry B. Raver, Darrell Stephens, and Mark Grove claim that throughout all of the proceedings they were and continue to be proceeding *pro se.* As *pro se* plaintiffs they were entitled to receive copies of all of the filings made with this Court. The following discussion relates to the service of certain pleadings and motions filed in this case.

On March 21, 2000, attorney Edwin J. Vargas entered an appearance appearing *pro hac vice* on behalf of Plaintiff John Hill only (doc. 17). Raver, Stephens, and Grove were served with this order. Defendants then filed their motion to dismiss which was served on all of the *pro se* plaintiffs (doc. 18). Raver, Stephens, and Grove did not respond to Defendants' motion to dismiss.[1] Attorney Vargas and his associate attorney William L. Summers filed a motion for an extension of time to respond to Defendants' motion to dismiss (doc. 19). Raver, Stephens, and Grove were not served with this motion. There was some confusion resulting from the filing of this motion because it states "Now come Plaintiffs . . . ." Further, this motion was docketed as Plaintiffs'

[1] Raver, Stephens, and Grove maintain that there was no need to respond to Defendants' motion to dismiss because Defendants could not successfully argue that Plaintiffs had failed to state a claim.

motion, not just Plaintiff John Hill's motion. Raver, Stephens, and Grove argue that when the Magistrate Judge granted Plaintiffs' motion for an extension of time; it was only granted with regard to John Hill because the caption reads "John Hill, *et al."* (doc. 23). However, Plaintiffs' contention appears to be wrong. The order states "Plaintiffs' . . . motion . . . "; it is not referring to a motion on behalf of a single plaintiff. Further, *et al.* is Latin for "and others." Regardless, Raver, Stephens, and Grove's argument is moot, as they chose not to respond to Defendants' motion to dismiss. Accordingly, even if the parties failed to properly serve Raver, Stephens, and Grove with the motion, it did not cause any prejudice to these Plaintiffs.

Raver, Stephens, and Grove next argue that attorney Vargas made a motion for attorney Scott Miller to appear on behalf of John Hill only, and Scott Miller's notice of appearance was made on behalf of Hill only. However, after reviewing these documents; there is no indication that they pertained only to the representation of John Hill. The documents are captioned "John Hill, et al." and the certificate of service shows that these documents were served on all ten inmate plaintiffs including John Hill, Raver, Stephens, and Grove. Raver, Stephens, and Grove have also failed to show any prejudice that may have resulted to them by the Court's act of granting this motion with regard to one or all of the plaintiffs; therefore, this Court holds that Plaintiffs' argument is moot because any error with regard to this motion was harmless.

Raver, Stephens, and Grove maintain that attorney Vargas mistakenly titled a document, "Plaintiffs' brief in opposition to Defendants' motion to dismiss" (doc. 24). This item was docketed as if filed by Plaintiffs Hill, Raver, Ballard, Stephens, Talbert, Grove, Gabbard, Brown, Young, and Billings. Then in Defendants' reply to Plaintiff

John Hill's brief in opposition to Defendants' motion to dismiss (doc. 25), Defendants' state

> Attorney Edwin Vargas has entered an appearance for Plaintiff John Hill only, according to his notice of appearance and the Court's docket. Therefore, the caption of his brief as "Plaintiffs' Brief in Opposition . . ." and the corresponding docket entry (No. 24) indicating that brief was filed on behalf of all of the Plaintiffs would appear to be in error.

This document was served on Stephens, Raver, and Grove as evidenced by the certificate of service signed by Dawn M. Tarka. Also served on Raver, Stephens, and Grove was an October 11, 2000 Report and Recommendation. *See* U.S. certified postal receipts.

The Magistrate Judge's report and recommendation was adopted by the District Judge; it denied Defendants' motion to dismiss, which was the motion to dismiss that Raver, Stephens, and Grove did not respond to. Both the report and recommendation and order adopting the report and recommendation were served on the *pro se* plaintiffs. However, the November 27, 2000 answer of Defendants Margarett Ghee, John Kinkela, and Reginald Wilkinson was served on "Plaintiffs' counsel, Edwin J. Vargas . . . ." Nothing shows that it was served on Raver, Stephens, or Grove. In all, Raver, Stephens, and Grove maintain that they did not get copies of the following documents:

- Defendants Margarett Ghee, John Kinkela, and Reginald Wilkinson's answer;
- Eric Halloway's notice of appearance (doc. 39);
- Defendants' motion for judgment on the pleadings and motion for qualified immunity (doc. 38);
- Hill's motion for extension of time to respond to Defendants' motion for judgment on the pleadings filed by Edwin Vargas (doc. 40); and
- Hill's brief in opposition to Defendants' motion for judgment on the pleadings (doc. 42).

In response to the motion for judgment on the pleadings, the Magistrate Judge issued an August 22, 2001 Report and Recommendation, which recommended granting Defendants' motion for judgment on the pleadings. It was served on all *pro se* Plaintiffs (doc. 176). On September 4, 2001, Raver, Stephens, and Grove filed their objections to the Magistrate Judge's report and recommendation (doc 198). In the objections, Raver, Stephens, and Grove argued that Defendants erroneously failed to serve them with Defendants' motion for judgment on the pleadings and motion for qualified immunity. By failing to serve them with these motions, the *pro se* plaintiffs were unable to respond. (Doc. 198, p. 6). Raver, Stephens, and Grove did not object to Defendants' failure to serve them with their answer in their objections. Rather, on September 28, 2001, Raver, Stephens, and Grove filed a document entitled, "Plaintiffs' judicial notice" (doc. 219). In this document, these Plaintiffs asked the Court to recognize that they have been and continue to be proceeding *pro se.* Defendants did not respond.

On October 17, 2001, Raver, Stephens, and Grove filed Plaintiffs' motion to alter or amend judgment (doc. 230). Plaintiffs raised the same arguments that appeared in their September 28th filing. Plaintiffs' motion to alter or amend judgment was denied on January 16, 2002 because judgment had not yet been entered in this case (doc. 238). However, the substantive issues of Plaintiffs' claims were not addressed in the Court's Order.

The Federal Rules of Civil Procedure provide the appropriate remedy when a party fails to defend an action: the plaintiff may move for an entry of default and default judgment. Fed. R. Civ. P. 55. Despite never being served with an answer, Raver, Stephens, and Grove never moved for an entry of default. Instead these Plaintiffs

continued to actively participate in the litigation. These Plaintiffs did not object to Defendants' failure to serve them with an answer until September 2001, ten months after the answer had been filed. This Court determines that Plaintiffs waived their objections by failing to make a timely motion objecting to Defendants' failure to appropriately defend this lawsuit.

Raver, Stephens, and Grove have not provided any arguments suggesting how they have been prejudiced by the failure of the parties to serve them with Eric Halloway's notice of appearance (doc. 39). Consequently, this Court determines that the failure to serve Ravers, Stephens, and Grove was harmless.

Plaintiffs Raver, Stephens, and Grove should have been served with Defendants' April 21, 2001 motion for judgment on the pleadings or in the alternative motion for qualified immunity (doc. 38). However, any prejudice was cured when Ravers, Stephens, and Grove objected to the report and recommendation. On August 22, 2001, the Magistrate Judge ruled on Defendants' motion. On September 4, 2001, Raver, Stephens and Grove filed their *pro se* objections to the report and recommendation. Plaintiffs raised their representation objections at this time. Then on September 28, 2001, despite Plaintiffs' objections, the Court adopted the report and recommendation finding that Raver, Stephens, and Grove were represented by counsel.

Assuming that Raver, Stephens, and Grove were not represented by counsel when they filed their objections to the report and recommendation, they had the opportunity to raise any substantive objections; this cured any resulting prejudice from Defendants' failure to serve them. Moreover, the only objections Raver, Stephens, and Grove made in their objections had to do with the issue of representation; they have not

provided any statements indicating how the outcome would have been different had they been appropriately served. Consequently, this Court determines that Plaintiffs Raver, Stephens, and Grove were not prejudiced when Defendants' failed to serve them with their motion for judgment on the pleadings.

The final two documents that Raver, Stephens, and Grove argue were not appropriately served on them are Hill's motion for extension of time to respond to Defendants' motion for judgment on the pleadings filed by Edwin Vargas (doc. 40) and Hill's brief in opposition to Defendants' motion for judgment on the pleadings (doc. 42). Again, any defect in the proper service of these documents was cured when Raver, Stephens, and Grove were served with the Magistrate Judge's report and recommendation, and they were given the opportunity to raise any objections.[2]

**II. The *Layne* Decision.**

Raver, Stephens, and Grove object to the Magistrate Judge's application of the *Layne* decision to the facts surrounding their convictions. In March 1998, the Ohio Adult Parole Authority ("OAPA") adopted new parole guidelines. *Layne*, 97 Ohio St. 3d at 457. The revised guidelines contain a "parole guidelines chart." The chart was designed to aid in the determination of how long a person should remain imprisoned. Under these guidelines, the OAPA is to consider two factors: (1) "the seriousness of an offender's criminal offense," and (2) "the offender's risk of recidivism." *Id.* Based on these scores, each inmate is assigned an offense category score, which appears on the

---

[2] Raver, Stephens, and Grove also argue that this Court has failed to address their claims that attorneys Vargas and Summers committed a fraud upon the Court. However, they have not pleaded a proper defendant for these claims.

vertical axis of the chart, and a criminal history or risk score, which is on the horizontal axis of the chart. *Id.* Where these numbers intersect on the chart determines the "applicable guideline range." *Id.*

The *Layne* decision discussed three pending inmate appeals. Layne, one of the inmate plaintiffs in the case, was indicted for the following violations: (1) kidnapping; (2) abduction; and (3) two counts of having a weapon while under disability. He pleaded guilty to abduction and two counts of having a weapon. If Layne would have been convicted of the crimes he pleaded guilty to, his highest offense category score would have been a 7, and his highest criminal history and risk category would have been a 4, which would have given him a guideline range between 60 and 84 months. *Id.* at 459. However, the OAPA decided that Layne had also committed the crime of kidnapping even though he was not convicted of this offense nor had he pleaded guilty to this offense. Based on this determination, Layne was given a criminal offense category score of 10; this increased the applicable guideline range to 150 to 210 months.

The Ohio Supreme Court determined that the words eligible for parole "ought to mean something." *Id.* at 463. Accordingly, an inmate's parole eligibility date must be based on only the offense or offenses of conviction as set forth in the plea agreement. *Id.* at 464.

Recently *Layne's* protection has been expanded in two other circumstances. *Ankrom v. Hageman*, 2005-Ohio-1546 (Ohio App. 10 Dist. Mar. 31, 2005). The first instance is very similar to the situation in *Layne*. The parole board fails to provide meaningful consideration for parole eligibility

when the inmate is assigned an offense category under the guidelines that

> nominally corresponds to the inmate's offense of conviction but which is "elevated" based upon the parole board's independent determination that the inmate committed a distinct offense for which he was not convicted.

*Eubank v. Ohio Adult Parole Auth.*, 2005 WL 2008683 * 2 (Ohio App. 10 Dist. Aug. 23, 2005). The second denial occurs "when the inmate is placed within the proper guidelines category pursuant to the offense of conviction, but the lowest possible range on the guidelines chart for that category is beyond the inmate's earliest statutory parole eligibility date." *Id.* at 3.

In *Eubanks,* the inmate had a statutory parole eligibility date which had passed in 1991, 14 years earlier. *Id.* He had been considered and denied parole at that time. Once the new guidelines were adopted, his parole guideline range was 210 to 270 months. By the time of the inmate's most recent parole hearing in 2004, the inmate had already served 228 months. Since the inmate was now within the guideline range, he had received meaningful consideration. "Having had meaningful consideration for parole and having been denied parole, [the inmate was] simply outside the situation discussed in *Ankrom*." *Id.*

Ohio prisoners have no liberty interest in their release on parole. *Jago v. VanCuren,* 454 U.S. 14, 20 (1981); *Rollins v. Haviland*, 93 Ohio St. 3d 590 (2001). Further, a state's procedural statutes and regulations governing parole do not create federally protectible liberty interests. *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (en banc). Nonetheless prisoners may have due process rights that protect them from the state using procedures to determine parole eligibility that deny them meaningful consideration for parole. *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). The Ohio courts have held that it is a breach of a defendant's plea bargain for

the Adult Parole Authority to fail to give meaningful consideration to releasing him on parole. *Layne*, 97 Ohio St. 3d 456 (syllabus); *Ankrom,* 2005-Ohio-1549 at ¶¶ 20-21. Thus Ohio prisoners who entered a plea bargain and are eligible by statute for release on parole, have a due process right to meaningful consideration by the parole board for release on parole.

**A. Darrell Stephens.**

On April 3, 1992, Plaintiff Darrell Stephens pleaded guilty to rape and felonious sexual penetration. (Coakley Aff., ¶ 6). He was sentenced to 5 to 25 years in prison. His first parole hearing was held on July 21, 1995-- three years prior to the adoption of the new guidelines. Therefore, it cannot be said that he did not receive meaningful consideration for parole under the *Layne* decision.

Stephens was again seen by a hearing panel on July 29, 1998. By this time, the new guidelines were put in place, and Stephens' parole eligibility guideline range increased from the original 5 year minimum sentence.[3] Under the guidelines, a rape conviction could result in a sexual offense category of 9 or 10. Stephens' act of rape was given a 9. The guidelines state that felonious sexual penetration should be graded as rape, so it was also given an offense category of 9. Since the offenses occurred at different times, the OAPA then applied the Multiple Separate Offense section, which increased the offense category from 9 to 10. His criminal history score was assessed as a 2. Based on this information, Stephens' has a guideline range of 150 to 210

[3] Stephens maintains that prior to the adoption of the new parole guidelines, he was eligible for parole after serving 40 months or 3 and ½ years; however, he has provided insufficient evidence on how this determination was reached.

months. Stephens maintains that under his sentence he would have been eligible for parole after 40 months. The guideline range exceeds the minimum sentence that he pleaded guilty to; therefore, by not considering him eligible for parole for an additional 110 months, he has been deprived of meaningful consideration for parole. However, Stephens has now served 13 years of his sentence. This exceeds the minimum guideline range under the new parole guidelines. Therefore, if Stephens has received a hearing before a panel after serving 150 months, then he has been given meaningful consideration for parole. However, the government has not responded to Stephens' motion, and this Court does not know when Stephens' last parole consideration hearing was held. Accordingly, if Defendants have not held a parole consideration hearing before a panel for inmate Darrell Stephens since his having served 150 months of his sentence, Defendants are **ORDERED** to provide Stephens with a meaningful parole hearing within thirty (30) days of the date of this order.

**B. Mark Grove.**

Plaintiff Mark Grove was found guilty of aggravated murder. He was admitted to prison on March 4, 1985. After serving 168 months, Grove was seen by a hearing panel on November 25, 1998. The board voted for a continuance until November 2008. At the 1998 hearing, the parole board categorized his offense as a category 13, and assigned him a 0 for his criminal history score. (Coakley Aff., ¶ 8). This gave him a suggested guideline range of 300 months to life. Grove maintains that he should have received meaningful consideration for parole after serving 14 years in prison or 168 months.

Grove has established that he may have been denied meaningful parole consideration under *Ankrom*. At his hearing in 1998, the new guidelines had been put into place. Rather than consider Grove for parole, the board figured out his parole guideline range which, based on the information provided by Plaintiffs, exceeded the minimum sentence. Moreover, the government has completely failed to respond to Grove's objections. Consequently, Defendants are **ORDERED** to provide Mark Grove with a meaningful parole eligibility hearing within thirty (30) days of the date of this order.

**C. Larry Raver.**

Larry Raver was convicted of murder by a jury in 1983. He was sentenced to 15 years to life. (Coakley Aff., ¶ 6). Raver was seen before the parole board on January 18, 1996; they voted to continue his incarceration until November 2005. Raver was seen on July 24, 2003 for a Special hearing. The parole board assigned him an offense category score of 11 and a criminal history or risk score of 6, which put him in a parole guideline range of 240 to 300 months. (Coakley Aff., ¶ 8). Raver claims that according to his court imposed sentence, he should have been eligible for parole in 12 ½ years; but instead, he must serve 20 years before receiving meaningful consideration for parole.

Raver received meaningful consideration for parole in 1996 when the parole board voted to continue Raver until November 2005. At this time, the new guidelines were not in place. There is no *Layne* or *Ankrom* violation as applied to Raver. It is a coincidence that the 2005 parole hearing date falls within the 240-300 month guideline

range. Larry Raver is not entitled to a new parole eligibility hearing according to the decisions in *Layne* or *Ankrom.*

**III. Other Claims**

Raver, Stephens, and Grove also argue that the Magistrate Judge failed to address the effects *Layne* had on their Separation of Powers claim, Ex Poste Facto claim, Due Process claim, and Equal Protection Claim. Plaintiffs objections fail to articulate how *Layne* had any impact on these claims. Rather, *Layne* and its progeny have continued to hold that inmates do not have a liberty interest in parole that are subject to the protections of due process. *Festi v. Ohio Adult Parole Auth.,* 2005 WL 1670796 * 4 (Ohio App. 10 Dist. July 19, 2005). Accordingly, due process does not require the OAPA to hold a parole hearing for an inmate. *Id*. Since, Raver, Stephens, and Grove have failed to adequately define and articulate their other claims under *Layne,* this Court is unable to address them.

**IV. Conclusion.**

Plaintiffs Larry D. Raver, Darrell Stephens, and Mark Grove's July 7, 2005 motion for reconsideration and objection to Magistrate Judge Abel's June 16, 2005 Report and Recommendation (doc. 379) is **SUSTAINED**. The Magistrate Judge's June 16, 2005 Report and Recommendation is **OVERRULED**. This Court holds that any prejudice that may have occurred by the failure to provide proper service to the *pro se* Plaintiffs was harmless and was cured by subsequent filings.

This Court **FURTHER HOLDS** that under the decisions in *Layne* and *Ankrom*, if Defendants have not held a parole consideration hearing before a panel for inmate

Plaintiff Darrell Stephens since his having serving 150 months of his sentence, Defendants are **ORDERED** to provide Stephens with meaningful parole hearing within thirty (30) days of the date of this order. Defendants are **FURTHER ORDERED** to provide Plaintiff Mark Grove with a meaningful parole eligibility hearing within thirty (30) days of the date of this order. This Court **FURTHER HOLDS** that Larry Raver is not entitled to a new parole eligibility hearing according to the decisions in *Layne* or *Ankrom.*

The Court having adjudicated all the claims presented by plaintiffs William L. Ridenour, Larry D. Raver, Darrell Stephens, and Mark Grove, the Clerk of Court is **DIRECTED** to enter **JUDGMENT** in accordance with this Order and the Order denying plaintiff Ridenour's motion for reconsideration.

/S/ George C. Smith
George C. Smith, Judge
United States District Court